**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____

ROBERT W. RODRIGUEZ,                        )
                                            )
            Petitioner/Plaintiff,           )
                                            )
            v.                              )        Civil Action No. 18-240 (KBJ)
                                            )
VIRGINIA S. PENROD, (in her official        )
capacity as the Chief of Staff in the Office )
of the Under Secretary of Defense for       )
Personnel and Readiness),                   )
                                            )
            Respondent/Defendant.           )
_____     )

## <u>COMPLAINT</u>

This Court's March 7, 2018, Minute Order acknowledged that, "This matter has been transferred to this Court from the United States Court of Appeals for the District of Columbia Circuit," and "ORDERED that Plaintiff shall file a complaint that comports with Fed. R. Civ. P. 8 and 10 on or before 3/28/2018.  It is FURTHER ORDERED that Defendant shall answer or otherwise respond to Plaintiff's complaint on or before 4/27/2018."  As the merits of this matter have been fully briefed and argued in the Court of Appeals, Plaintiff incorporates by reference the entire docket in the Court of Appeals (Exhibit 1), and further attaches, as Exhibits 2-7 respectively, Petitioner's Brief, Petitioner's Reply Brief, Petitioner's Addendum, the Deferred Appendix ("DA"), Refiled Petition for Review, and Amended Refiled Petition for Review.

## INTRODUCTION

1.      Petitioner/Plaintiff Robert W. Rodriguez is a retired Army Lieutenant Colonel ("LTC Rodriguez") who in 1996 blew the whistle on fraudulent accounting for soldiers in the New York Army National Guard, a scandal that later became known as the "Ghost Soldier Scandal."

2.     After blowing the whistle, LTC Rodriguez was reprised against by his commanding

officer in late 1996 and throughout 1997, ultimately resulting in LTC Rodriguez' constructive

discharge from the Army just before he would have been considered for promotion to Colonel.

3.     LTC Rodriguez applied for relief from the Army Board for Corrections of Military

Records ("ABCMR"), which granted partial relief but denied his request for retroactive

promotion to Colonel.

4.     LTC Rodriguez appealed the ABCMR's denial of full relief administratively to the

Secretary of Defense under the "Review by Secretary of Defense" provision of the Military

Whistleblower Protection Act ("MWPA"), 10 U.S.C. §1034, which provides:  "Upon the

completion of all administrative review [within a military department, the service member], if

not satisfied with the disposition of the matter, may submit the matter to the Secretary of

Defense.  The Secretary shall make a decision to reverse or uphold the decision of the Secretary

of the military department concerned in the matter within 90 days after receipt of such a

submittal."

5.     In his Petitioner's Brief to the United States Court of Appeals for the District of

Columbia Circuit, LTC Rodriguez argued, *inter alia,* and alleges here:  "This Petition for Review

sheds light on a conflicts of interest-plagued and lawless sham of an administrative appeal to the

Secretary of Defense process that is mandated by Congress to protect military whistleblowers

such as Petitioner."

6.     In his Reply Brief to the United States Court of Appeals for the District of Columbia

Circuit, LTC Rodriguez argued, *inter alia*, and alleges here, that "applying a non-deferential

standard of de novo review, (1) the decision on review is *ultra vires* because the Secretary of

Defense did not properly delegate authority to Penrod; and (2) even if Penrod had authority, her

2

decision (a) lacks the requisite satisfactory explanation; and (b) was 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.' 5 U.S.C. §706(2). . . . Finally, the Secretary of Defense's extraordinary *post hoc* effort to cure the lack of properly delegated authority -- the day before Respondent's Brief was due -- confirms that the decision on review is *ultra vires* (and otherwise unlawful)."

7.      In oral arguments before the United States Court of Appeals for the District of Columbia Circuit on November 14, 2016, Counsel for LTC Rodriguez argued, *inter alia*, and LTC Rodriguez alleges here, that "it would be so easy for this Court simply on the basis of missing a 90-day statutory deadline declaring the decision before the Court arbitrary and capricious, directing the relief we've asked for [on pages 47-48 of Petitioner's Brief, including retroactive promotion of LTC Rodriguez to Colonel (retired)]."

8.      Respondent/Defendant Virginia Penrod never denied that the administrative appeal process was plagued with conflicts of interest in the United States Court of Appeals for the District of Columbia Circuit, which in transferring this matter to this District Court observed in its May 26, 2017, Opinion: "Rodriguez indisputably has been personally and directly aggrieved by the Defense Department's decision on his claim."

**THE PARTIES**

9.      Plaintiff Robert W. Rodriguez is a United States citizen and natural person who resides in New York, New York.

10.     Defendant Virginia S. Penrod, the Respondent in the Court of Appeals above, is sued in her official capacity. At all relevant times, she was the civilian Chief of Staff to the Under Secretary of Defense for Personnel and Readiness.

## JURISDICTION AND VENUE

11.     This is an action seeking relief under the MWPA, 10 U.S.C. §1034, the Administrative

Procedure Act ("APA"), 5 U.S.C. §§ 701 *et seq.*, and the Declaratory Judgment Act, 28 U.S.C. §

2201.  As this action arises under the laws of the United States, this Court has subject-matter

jurisdiction pursuant to 28 U.S.C. § 1331.

12.     This Court has personal jurisdiction over all defendants pursuant to D.C. Code §13-

423(a)(1) because they transact substantial business in this district.

13.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(e) because this is an action

against an officer of an agency of the United States, and a substantial part of the events giving

rise to the claims alleged herein occurred in this district.

## STATEMENT OF FACTS
### (from Petitioner's Brief)

14.     Petitioner, a retired Army Lieutenant Colonel, was initially reprised against by his

commanding officer who took retaliatory adverse actions in late 1996 and throughout 1997 after

LTC Rodriguez had complained about fraudulent accounting for soldiers in the New York Army

National Guard, a scandal that later became known as the "Ghost Soldier Scandal."  See GAO

Report of March 20, 2002 (DA334-39); New York State Office of State Inspector General

Report of Investigation, Alleged Fraud at the Division of Military and Naval Affairs, Case #

0548-018-2000, May 22, 2002 (DA340-50)).

15.     These reprisals by his commanding officer led to LTC Rodriguez being constructively

discharged from the Army, which in turn barred LTC Rodriguez from even being considered for

promotion to Colonel -- which promotion consideration would have taken place within months

of his constructive discharge.

16.    On August 1, 1996, petitioner filed his initial military whistleblower complaint with his superior officer at the time, and with the Inspector General of the New York Army National Guard.

17.    Subsequent to these "protected communications," and throughout 1997, LTC Rodriguez' commanding officer engaged in a series of adverse actions.

18.    Among other such actions, the commanding officer directed LTC Rodriguez' immediate supervisor to watch LTC Rodriguez closely and to report on his activities.

19.    A few months later, the commanding officer discovered that LTC Rodriguez had submitted an application to be credited with an additional Military Occupational Specialty.

20.    Rather than processing the packet in the usual administrative procedure, the Commanding officer screamed at the New York Army National Guard administration staff.

21.    He also reportedly stormed out of the State Headquarters with the application packet to return it to the officer who had forwarded it to State Headquarters.

22.    The next adverse action was in November 1997, when LTC Rodriguez' position was eliminated by State headquarters.

23.    Contrary to normal procedures, LTC Rodriguez was not allowed to interview for other appropriate positions or even to swap positions with another officer who was closer to retirement.  *See* January 3, 2012 Request for Consideration at pp. 43-49; (DA163-69); October 8, 2011 Statement of MG Joseph Taluto, Adjutant General New York State (DA557-59) ["Under like circumstances, other officers were afforded another position, swapping among officers or other personnel action in order to keep from discharging officers who wanted to stay. LTC Rodriguez was being treated as a "special case." He was involuntarily selected for retirement …" ¶10]; Statement of MG John Fenimore, Adjutant General New York State (DA560-61) ["He

would never have retired if he was treated properly by the Army National Guard and essentially involuntarily discharged." ¶10]; Statement of Michael Finnegan, Counsel to the Governor (DA566-74) ["there were even several lieutenants colonel at Camp Smith who offered to trade positions … This was denied him and with no other recourse, Mr. Rodriguez was forced to retire." ¶39].

24.     Petitioner's August 1, 1996, complaint was investigated as a whistleblower complaint by the Department of the Army Inspector General ("DAIG") who substantiated reprisal, which substantiated reprisal the Inspector General of the Department Defense ("DoD IG") approved, instructing LTC Rodriguez to seek relief for this reprisal in the ABCMR on September 17, 1998 (DA615-16).

25.     In early 2007, Petitioner received a waiver for time from the Acting Deputy Assistant Secretary of the Army for the Army Review Board Agency for the submission of his ABCMR application.

26.     He submitted his application which was accepted by the ABCMR as timely (DA363-94).

27.     After ABCMR consideration, he received partial relief in the form of removal of one letter of reprimand and two efficiency reports from his military file; but, he was denied all other requested relief, including LTC Rodriguez' request for "promotion to colonel" (DA174-75; DA519-56).

28.     Petitioner submitted his reconsideration request on January 3, 2012, based on new evidence to include the forgery of the general officer's approval signature on a supplemental investigation by the Department of the Army IG (DA120-74).

29.     The ABCMR review on reconsideration (DA113-19) found that Petitioner had suffered "a number of injustices" (DA118, ¶6) but asserted that his claim for further relief was barred by laches for delaying his application (DA118, ¶7).

30.     This latter ABCMR holding was contradicted by the Board's prior decision granting partial relief and a waiver of time.

31.     The ABCMR laches argument was thus a "red herring" as it was not raised during the initial review, and even if it had been a valid argument before the Board waived it by its prior action in accepting the original application (DA174-75; DA519-56) and granting partial relief.[1]

32.     This was brought to the attention of Respondent's predecessor (DA78), and again when Respondent reviewed the full DoD Appeal packet (DA77-112).

33.     On September 28, 2012, Petitioner submitted his administrative appeal to the Secretary of Defense in accordance to DoD Directive 7050.06 (DA77-112), which appeal Petitioner supplemented on October 22, 2012 (DA56-70).

34.     In response, on January 28, 2013, Respondent's predecessor issued a nine-line summary denial letter that referred to the wrong MWPA administrative appellant and the wrong branch of service (DA32).

---

[1] On August 5, 2010, the ABCMR granted partial relief in that "the Board recommends that all Department of the Army records of the individual concerned be corrected by removing the LOR, dated 26 February 1996, from his MPRJ and ensuring it is not filed in any of his records." (DA555). On August 10, 2010, Army Review Board Agency informed Petitioner that he was "granted further relief by removing the two OERs, one for the period ending 31 March 1996 and one for the period ending 1 September 1996, from your records and by having a Nonrated Statement placed in your records in their stead." (DA556).  This partial relief was affirmed by Ms. Penrod who denied the other substantial relief requested including promotion to colonel and the associated emoluments.

35.     That decision was made by the Chief of Staff for the Under Secretary of Defense for Personnel and Readiness ("USD(P&R)"), who was not the person designated by law or regulation to process MWPA administrative appeals on behalf of the Secretary of Defense.

36.     On February 27, 2013, Petitioner brought several defects in the denial letter to the attention of the Chief of Staff, and requested reconsideration (DA33-39).

37.     Rather than provide a more substantial analysis, six weeks later, on April 11, 2013, the Chief of Staff added a paragraph to his prior letter in which he now claimed that he had been appointed to process MWPA appeals by the Acting Under Secretary of Defense (P&R), and he further claimed falsely that he had transmitted his earlier decision to Petitioner (DA31-32), which he had not.  The Chief of Staff did write that he "regret[ed] the error" relating to his prior letter.

38.     Petitioner then filed a petition for review in this Court on May 31, 2013 (D.C. Cir. 13-1192).

39.     After issues were joined the parties entered into the D.C. Circuit's Appellate Mediation Program.  They met under the supervision of Appellate Mediator, Daniel K. Mayers, Esq.

40.     Among other things, Petitioner demonstrated that the Chief of Staff's appointment was defective as that position was unqualified by law and regulation.

41.     Indeed, for several years, DoD was using the service of unqualified individuals to conduct appeals under the provisions of the MWPA, 10 U.S.C. § 1034 (Add. 4-10) and DoD Directive 7050.06 (Add. 42-57).

42.     The parties entered into a settlement requiring reconsideration of his Appeal to DoD with all rights and claims preserved if litigation were again necessary. (DA627-30.)

43.     In addition to the previous Appeal documentation, Petitioner provided four supplemental letters dated September 25, 2014 (DA6-30), October 21, 2014 (DA583-95), December 10, 2014 (DA596-625) and January 22, 2015 (DA626).

44.     On March 6, 2015, the Respondent, in her capacity as the Chief of Staff and alleged successor of the prior reviewing official, rendered a short decision upholding the decision of the ABCMR (DA1-05).

45.     Again, the decision was almost three months late as it was due within 90 days of meeting with LTC Rodriguez on September 29, 2014.

46.     Additionally, the decision was made by a person who was not authorized by the MWPA, 10 U.S.C. § 1034(Add. 4-10) or DoD Directive 7050.06 (Add. 42-57) to act on behalf of the Secretary of Defense.

47.     As described more fully infra, the March 6, 2015 decision failed to address several points made on the Appeal and those it considered were incorrectly determined; thus, rendering the decision arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law or if it was taken without observance of procedure required by law.  5 U.S.C. § 706(2)(A) (Add. 3).

48.     Thereafter, Petitioner timely filed his renewed Petition for Review on April 2, 2015.

49.     On May 26, 2017, the United States Court of Appeals for the District of Columbia Circuit rendered its Opinion, reported as *Rodriguez v. Penrod*, 857 F.3d 902 (D.C. Cir. 2015).

50.     The Court of Appeals found that, "Rodriguez indisputably has been personally and directly aggrieved by the Defense Department's decision on his [MWPA reprisal] claim" (857 F.3d at 905). The Circuit Court went on to say: "[we] shall, if it is in the interest of justice, transfer [the] action * * * Accordingly, we order the action transferred to the United States District Court for the District of Columbia."  857 F.3d at 907.

9

## COUNT ONE
### (*Ultra Vires* Appointment Order)

51.    Plaintiff re-alleges the allegations set forth in paragraphs 1-50 above as if fully set forth herein.

52.    This action challenges the Appointment of Defendant Penrod issued in her capacity as the Appellate Authority for responding on behalf of the Secretary of Defense under MWPA, 10 U.S.C. § 1034 and DoD Directive 7050.06.

53.    The issuance of that appointment order constitutes final agency action that is reviewable under the APA.

54.    The appointment order exceeded the authority granted to the Under Secretary of Defense for Personnel and Personnel and Readiness under applicable law and DoD regulations. Specifically, Wright, who was "performing duties" of the Principal Deputy Under Secretary of Defense for Personnel and Readiness**,** was without the authority to appoint Mr. Tamburrino to act as Appellate Authority for purposes of the MWPA.

55.    The then operant DoD Directive 7050.06 specified that the only authorized Appellate Authority (other than the Secretary of Defense) for MWPA complaints was the Deputy Under Secretary of Defense for Program Integration.  Neither law nor regulation provided for substitution of another office for the Deputy Under Secretary of Defense for Program Integration.

56.    DoD Directive 7050.06 was promulgated under the authority of the Secretary of Defense and signed by the Deputy Secretary of Defense – the secretary's immediate subordinate with general power to act for the Secretary of Defense.  They are the only persons authorized to change the terms of DoD Directive 7050.06.

57.    In 2015, DoD Directive 7050.06 was substantially revised and reformatted.  The Secretary of Defense in this revised Directive delegated Appellate Authority solely to the Under Secretary of Defense for Personnel and Readiness.  There is no procedure for sub-delegation.

58.    The failure of the Department of Defense to fill the position of the Under Secretary of Defense for Personnel and Readiness with a qualified individual means that the Appellate Authority would revert to the Deputy Secretary of Defense or the Secretary of Defense.

59.    Only the Secretary of Defense or the Deputy Secretary of Defense can change the specific guidance of DoD Directive 7050.06.

60.    Secretary Wright, who was "performing duties" of the Principal Deputy Under Secretary of Defense for Personnel and Readiness, was never delegated the authority to appoint the Appellate Authority for the Appellate Authority for a MWPA complaint.

61.    The appointment order allowing the Chief of Staff to act as Appellate Authority is thus arbitrary and capricious, an abuse of discretion, and otherwise not in accordance with law. It must be set aside under the APA.

62.    Because the appointment order as DoD Appellate Authority exceeded the Under Secretary of Defense for Personnel and Personnel and Readiness authority, all actions taken pursuant to the authority it purports to grant the Appellate Authority to the Chief of Staff, Office of the Under Secretary of Defense for Personnel and Personnel and Readiness are likewise *ultra vires* and must be set aside.

63.    This action satisfies all procedural requirements for an APA claim.

64.    DoD constitutes an "agency" whose actions are reviewable under the APA. Similarly, the actions of the Under Secretary of Defense for Personnel and Personnel and Readiness and the Chief of Staff of that office are reviewable under the APA.

65.     The appointment order as DoD Appellate Authority constitutes "final agency action" that is subject to judicial review because it is a final order through which Under Secretary of Defense for Personnel and Personnel and Readiness consummated the selection and appointment of Defendant Penrod as the DoD Appellate Authority under MWPA, 10 U.S.C. § 1034 and DoD Directive 7050.06.

66.     Other than the relief requested, there is no adequate remedy in a court for the harm caused to LTC Rodriguez by the *ultra vires* appointment order as DoD Appellate Authority.

67.     LTC Rodriguez is "adversely affected or aggrieved" and damaged in his legal rights by the appointment order as DoD Appellate Authority because it subjects him to an *ultra vires* exercise of authority that has caused him to suffer significant reputational harm and financial expense, and it denied him "due process' as guaranteed by the Fifth Amendment to the U.S. Constitution, the MWPA, 10 U.S.C. § 1034, and DoD Directive 7050.06.

**COUNT TWO**
**(Defendant's Claimed Appointment as the Appellate Authority**
**Violated DoD Directive 7050.06, the MWPA, and**
**the Appointments Clause of the U.S. Constitution)**

68.     Plaintiff re-alleges the allegations set forth in paragraphs 1-67 above as if fully set forth herein.

69.     This action challenges the conduct of Defendant Penrod as beyond her legal capacity under the appointment order as DoD Appellate Authority.

70.     Even if Wright had the power to act as if she were either the Under Secretary of Defense for Personnel and Readiness or the Principal Deputy for such position, she would be ineligible to designating an official to "make a decision to reverse or uphold the decision of the Secretary of the military department concerned" (10 U.S.C. § 1034(h), formerly § 1034(g), as implemented by DoDD 7050.06, ¶ 5.2.2.).

71.    Congress' intent, as evidenced in the MWPA and the Federal Vacancies Reform Act of

1998 was to put the Secretary of Defense in a supervisory role over the military service

secretaries as the final agency authorities in military whistleblower reprisal matters.

72.    The President's intent to keep statutory duties assigned by Congress to Senate-confirmed

DoD officials in the hands of Senate-confirmed DoD officials, as evidence in Executive Order

13533 of March 1, 2010, titled "Providing an Order of Succession Within the Department of

Defense."

73.    The Deputy Secretary of Defense's express intention in DoD Directive 5124.02, ¶ 6.17 of

June 23, 2008, to limit any further delegation of the Secretary of Defense's authority to "make a

decision to reverse or uphold the decision of the Secretary of the military department concerned"

(10 U.S.C. 1034) (Add. 4-10) to either the Under Secretary of Defense for Personnel and

Readiness (not the Principal Deputy) or the Under Secretary may redelegate authority to the

Deputy Under Secretary of Defense for Program Integration.

74.    When DoD Directive 7050.06 was revised on April 17, 2015, the Under Secretary of

Defense for Personnel and Readiness was designated as the official who "[r]eviews reports on

the results of investigations conducted pursuant to this directive and section 1034 of [Title 10,

United States Code]."

75.    If Under Secretary Conaton was not able to perform her delegated duty to "Exercise the

authority of the Secretary of Defense under section 1034(g) of Reference (a) [the MWPA, 10

U.S.C. §1034] regarding review of final decisions of the Secretaries of the Military Department

concerned on applications for correction of military records decided under Military

Whistleblower Protection procedures (DoDD 5124.02 of June 23, 2008) on December 17, 2012,

the authority to exercise that delegated statutory duty reverted either to the Deputy Secretary of Defense or ultimately back to the Secretary of Defense.

76.     On December 17, 2012, the position of Principal Deputy Under Secretary was vacant; hence, only Under Secretary Conaton had the regulatory competence to act as appellate authority on behalf of the Secretary of Defense.

77.     Defendant's actions are reviewable under the Declaratory Judgment Act and under the long-recognized authority of the federal courts to grant equitable relief to prevent injurious acts by public officers.

78.     The appointment order as DoD Appellate Authority purports to give Defendant Penrod authority to review appeals for substantive relief for a reprisals under the MWPA, 10 U.S.C. § 1034 and DoD Directive 7050.06." This appointment order was null and void.

79.     Any delegation of duties under the MWPA and DoD Directives 3020.04 and 7050.06,to the Chief of Staff would be in contravention of the DoD Directives, the MWPA and the Appointments Clause of the Constitution, Article II, Section 2, Clause 2.

80.     Even if Wright had the authority that grant of authority were lawful, Defendant Penrod's inquiry was woefully inadequate, arbitrary, capricious, contrary to law, and violated LTC Rodriguez' due process.

81.     Defendant Penrod's decision on review should be vacated with directions for the Secretary of Defense, or his properly appointed delegate, on account of the egregiously arbitrary and capricious   administrative record now before this Court, to effectuate the equitable relief LTC Rodriguez has repeatedly requested through the ABCMR application process and then through the MWPA administrative appeal to the Secretary of Defense process, including retroactive promotion to Colonel.

82.     LTC Rodriguez has been injured by Defendant Penrod's decision, which have caused him significant reputational harm, and have forced him to incur substantial costs and expenses to seek the relief he is due as a matter of law.

83.     Other than the relief requested, there is no adequate remedy at law for the harm caused LTC Rodriguez by Defendant Penrod's *ultra vires* and unlawful conduct.

84.     For the reasons set forth above, LTC Rodriguez should be awarded injunctive relief as he has suffered irreparable injury, remedies at law are inadequate to compensate for that injury, the balance of hardships warrants injunctive relief, and the public interest would not be disserved by a permanent injunction.

**COUNT THREE**
**(Defendant's Decision Did Not Provide The Requisite Satisfactory Explanation**
**For Her Action, Thereby Violating the Due Process Requirements Under**
**Found in DoD Directive 7050.06, the APA, the Military Whistleblower**
**Protection Act, And the Fifth Amendment to the U.S. Constitution)**

85.     Plaintiff re-alleges the allegations set forth in paragraphs 1-84 above as if fully set forth herein.

86.     Assuming *arguendo* that Defendant Penrod was properly appointed, she did not include in her final decision the requisite "satisfactory explanation for its action, including a 'rational connection between the facts found and the choice made.' *Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168 (1962)," *Motor Vehicles Mfgs. Ass'n v. State Farm Mutual Auto Ins. Co.*, 463 U.S. 29, 43 (1983).

87.     Defendant Penrod's failure is especially egregious in light of Plaintiff's extensive administrative record before her demonstrating that LTC Rodriguez raised non-frivolous due process claims which were never addressed by either the Army Board for Correction of Military Records or by the Secretary of the Army.

88.     Defendant Penrod, in response to LTC Rodriguez's administrative appeal to the Secretary

of Defense, ignored those non-frivolous due process claims and other violations including:

> (a) In the fall of 2011, after years of repeated attempts to obtain a readable copy
> of the DAIG's 1999 Supplemental Report of Investigation (1999 ROI), LTC
> Rodriguez discovered that this 1999 ROI, the primary document upon which the
> ABCMR had based its August 2010 decision not to grant full relief, was the
> product of a forged (and misspelled) signature of the four-star General "Approval
> Authority," the practical result of which was to reinstate the prior 1998
> substantiation of whistleblower reprisal by the Inspectors General of the Army
> and of the Department of Defense under the MWPA, for which substantiated
> reprisal LTC Rodriguez has never been granted any relief – and for which failure
> to grant any relief based upon whistleblower reprisal there is no "satisfactory
> explanation"; and

> (b) The Army deprived LTC Rodriguez of procedural due process when the
> ABCMR failed to follow procedures prescribed in the MWPA, failed to forward
> its 18 April 2012 Report of Proceedings as "the decision document . . . to the
> Secretary of the Army for final decision" as required by Army Regulation 15-185,
> ¶2-13(b), failed to advise LTC Rodriguez of his appellate right under 10 U.S.C. §
> 1034(h) (formerly 10 U.S.C. § 1034(g)), and failed to mail a copy of its 18 April
> 2012 Record of Proceedings to LTC Rodriguez' Counsel of Record, among other
> procedural failures, all of which failures were arbitrary, capricious, and contrary
> to 10 U.S.C. § 1034, as implemented by DOD 7050.06 -- and for which there is
> no agency explanation, notwithstanding the Supreme Court's requirement that
> there be a "satisfactory explanation."

89.     For the reasons set forth above, LTC Rodriguez should be awarded injunctive relief as he

has suffered irreparable injury, remedies at law are inadequate to compensate for that injury, the

balance of hardships warrants injunctive relief, and the public interest would not be disserved by

a permanent injunction.

### COUNT FOUR
### (Defendant Provided No Satisfactory Explanation for the Military's
### Failure to Grant Relief for Substantiated Reprisal in Violation of
### DoD Directive 7050.06 and the MWPA)

90.     Plaintiff re-alleges the allegations set forth in paragraphs 1-89 above as if fully set forth

herein.

91.     Defendant Penrod and her Chief of Staff predecessor had three opportunities to address the indisputable fact that LTC Rodriguez has never been granted any relief whatsoever for ABCMR acknowledged due process violations and associated injustices in connection with LTC Rodriguez' claims of reprisal under the MWPA.

92.     On each of these four occasions, Defendant Penrod and her Chief of Staff predecessor declined to provide the requisite satisfactory explanation as required by law and regulation.

93.     Specifically, Mr. Tamburrino received LTC Rodriguez's appeal dated September 28, 2012 and LTC Rodriguez' February 27, 2013, letter which explained that Mr. Tamburrino's initial letter was a painfully terse short paragraph wholly devoid of any sign of independent analysis. Defendant Penrod, in addition to reviewing LTC Rodriguez's initial appeal to the Secretary of Defense, received a painstaking completed September 25, 2014, memorandum and an oral presentation by LTC Rodriguez on September 29, 2014.

94.     The blatant indecisiveness by these two DoD civilian officers was "arbitrary and capricious" agency action.

95.     Defendant Penrod and Mr. Tamburrino, notwithstanding numerous opportunities to provide a "satisfactory explanation" for their indecisiveness, have not granted any relief whatsoever for acknowledged due process violations in connection with LTC Rodriguez' claims of reprisal under the MWPA.

96.     Penrod refused to recognize that the 1999 ROI was fraudulent when she observed:

> "I understand that you view the second DAIG ROI as a 'fraud' and 'cognizable crime,' based on the statement of the former Army Vice Chief of Staff that he does not recognize the signature on the 1999 ROI as his own." She went on to observe that the ABCMR had considered the forgery and still held that there "was insufficient evidence to justify the retroactive promotion –related relief you sought."

97.    An Appellate Authority who rationale is mere to rubber-stamp a prior decision is no Appellate Authority.  Defendant Penrod was required to but did not exercise her own judgment; she merely relied on the decision of the agency below.

98.    Furthermore, the ABCMR decision was grounded on a claim of *laches* which is itself is an injustice as it was the Deputy Director of ARBA which supervised the ABCMR who granted LTC Rodriguez the extension until after his resignation for filing his application for relief.

99.    Even assuming *arguendo* that Defendant Penrod is correct (which she is not), the indisputable fact is that Defendant Penrod failed to address the "non-frivolous, material" claim that LTC Rodriguez has never been granted any relief whatsoever for "acknowledged due process violations (and associated 'injustices') in connection with LTC Rodriguez's claims of reprisal under the MWPA."

100.    Specifically, under DoD military whistleblower reprisal precedent, once the military whistleblower satisfies his burden of establishing the *prima facie* case of reprisal, the burden shifts to the DoD to "provide clear and convincing evidence that it would have taken the same actions had Complainant not made protected disclosures."  Inspector General of the Department of Defense, "Appropriated Fund Employee Whistleblower Reprisal Investigation," Report No. 20121205-001932, at p.11 (Dec. 2, 2013) ("the burden shifts to the complained against official to establish – by a clear and convincing evidence standard – that . . . [t]he personnel action would still have been taken, withheld, or threatened even if the protected communication had not been made").

101.    Hence, Defendant Penrod admits that LTC Rodriguez was reprised against on account of military whistleblower activities, and that the ABCMR awarded no relief whatsoever for that

reprisal.  Yet Defendant Penrod provides no explanation whatsoever for this blatant lack of any relief for an acknowledged injustice, *i.e.*, military whistleblower reprisal.

102.    For the reasons set forth above, LTC Rodriguez should be awarded injunctive relief as he has suffered irreparable injury, remedies at law are inadequate to compensate for that injury, the balance of hardships warrants injunctive relief, and the public interest would not be disserved by a permanent injunction.

## COUNT FIVE
**(Defendant Provided No Satisfactory Explanation for the Military's Failure
to Grant Relief for Substantiated Procedural Due Process Abuses in
Violation of DoD Directive 7050.06, the APA, the Military Whistleblower
Protection Act, And the Fifth Amendment to the U.S. Constitution)**

103.    Plaintiff re-alleges the allegations set forth in paragraphs 1-102 above as if fully set forth herein.

104.    Defendant Penrod and her Chief of Staff predecessor also had three opportunities to address the indisputable fact that LTC Rodriguez has never been granted any relief whatsoever for multiple substantiated procedural due process violations.

105.    This misconduct was blatantly "arbitrary and capricious" agency action was brought to the attention of Mr. Tamburrino in the February 27, 2013, and was brought to Defendant Penrod's attention again during the in-person meeting with her on September 29, 2014.

106.    LTC Rodriguez's February 27, 2013, letter to Mr. Tamburrino, pointed out that there was no agency explanation whatsoever for rejecting the following three bases for appeal in LTC Rodriguez's September 28, 2012, Appeal Memorandum, even though the Supreme Court requires a "satisfactory explanation":

> (a)  LTC Rodriguez's Due Process Right was violated when the Army failed to
> afford him "Notice and an Opportunity to be Heard" when he was denied
> repeatedly a copy of the 1999 ROI which was contrary to the Fifth Amendment of
> the U.S. Constitution.  In connection with this basis for appeal, as explained on

the first page of LTC Rodriguez's Memorandum of Law, in the fall of 2011, after years of constant attempts to obtain a readable copy of the DAIG's 1999 ROI, LTC Rodriguez discovered that this primary document upon which the ABCMR had based its decision not to grant full relief in August 2010 was itself the product of a forged (and misspelled) signature of the 4-star Approval Authority.

(b)  LTC Rodriguez's Due Process Right, was violated when the Army failed to follow the Procedures prescribed in the MWPA, and its own rules, which failures impeded Secretary of Defense Review under 10 U.S.C. § 1034 (Add. 4-10) and were otherwise arbitrary, capricious, and contrary to law.

(c)  Our October 22, 2012, "supplemental authorities" letter brought to the attention of the Secretary of Defense "pertinent and significant authorities [which had] come to a parties attention after the party's brief has been filed," the rejection of which by the Secretary of Defense on appeal under §1034(g) of the MWPA has never been explained. Specifically, LTC Rodriguez brought to the Secretary of Defense's attention an Air Force Board for Correction of Military Records precedent practically on all fours with our appeal.  The Air Force Board awarded a retroactive "direct promotion to the grade of colonel as if selected by the Calendar Year 2003 Colonel Central Selection Board" based on the applicant's contention that, "the 347 RWQ/GC's action to relieve him from command constituted both an injustice and an abuse of authority and that the reprisal referral OPR was based on the fact that he had filed an IO complaint against the wing commander." This supplemental authority directly supported LTC Rodriguez's appellate briefing that the ABCMR should have awarded retroactive promotion to LTC Rodriguez and reversal by the Secretary of Defense is now warranted because the ABCMR had acknowledged "A Number of Injustices," including but not limited to the DAIG's 1998 Reprisal substantiation under the MWPA, but failed to any relief whatsoever for reprisal.

February 27, 2013, Letter, pp. 2-3.

107.    Penrod did not provide the requisite "satisfactory explanation for its action, including a 'rational connection between the facts found and the choice made'" for any of these three specifically enumerated due process violations for which LTC Rodriguez has received no relief whatsoever.

108.    Defendant Penrod's March 6, 2015, final decision raised a number of straw men arguments only to knock each of them down, concluding:  "there is insufficient evidence that the ABCMR disregarded any law or regulation, or violated your due process rights during the

original 2010 review and 2012 reconsideration of your case, by denying you notice of [sic], and an opportunity to be heard."

109.    Defendant Penrod, notwithstanding multiple opportunities to do so, has never addressed the above three enumerated non-frivolous due process claims.

110.    This Court should hold that Defendant Penrod acted arbitrarily; and, in light of the fact that this matter has already been remanded once, this Court should direct that the Secretary of Defense (or the DoD Directive 7050.06 designee), for whom Defendant Penrod purported to issue the final decision on review, to provide the "whole loaf" of relief to LTC Rodriguez that is warranted by the administrative record developed in this matter, including retroactive promotion.

## COUNT SIX
### (Failure to Develop Any Standard of Review for Appeal Was a Due Process Abuse and Violated DoD Directive 7050.06, the APA, the MWPA)

111.    Plaintiff re-alleges the allegations set forth in paragraphs 1-110 above as if fully set forth herein.

112.    Defendant Penrod's final decision on review is a sham.

113.    Defendant Penrod applied no "standard" as there is no prescribed "standard of review" for the appeal to the Secretary of Defense. Nor did she articulate any self-created standard when addressing LTC Rodriguez's appeal.

114.    The history of this matter, especially after this matter was submitted to the Department of Defense on appeal includes evidence of an adversarial process wherein LTC Rodriguez was not allowed to review the adversarial brief submitted to the appellate decision maker (*i.e.*, to Defendant Penrod).

115.    Specifically, Defendant Penrod's decision was an artifice created by her legal staff who presented her with an adversarial, one-sided memorandum of law and facts and subsequently, the same staff personnel prepared Defendant Penrod's decision.

116.    In Summer 2012, LTC Rodriguez's efforts to submit an administrative appeal to the Secretary of Defense under 10 U.S.C. § 1034 was guided by counsel's conversations with the DoD staff, Thus, counsel (who previously had served as the Senate-confirmed Inspector General of the Department of Defense) endeavored to ascertain precisely what the procedure was for pursuing such an administrative appeal. As a starting point, Counsel tried to contact the staff of the official identified in DoD Directive 7050.06, "Military Whistleblower Protection," July 23, 2007, as the "Deputy Under Secretary of Defense for Program Integration . . . Attention: Legal Policy." Id. ¶E3.3.5. at p.16.

117.    Among others he received responses from the staff of the DoD OIG (August 1, 2012 Letter from DoD OIG), LTC Rodriguez soon ascertained that the position of Deputy Under Secretary of Defense for Program Integration had been eliminated, and it was not clear if and when a replacement would be named for purposed of what DoD Directive 7050.06 described as "APPEAL TO THE SECRETARY OF DEFENSE." Id. ¶E3.3. at p.15.

118.    LTC Rodriguez soon ascertained from a staff attorney in the Office of Legal Policy that, in the words of the hand-out provided by that staff attorney, "10 U.S.C. § 1034 and DoDD 7050.06 do not address the appropriate standard of review to be applied" by the Secretary of Defense or his designee in any "APPEAL TO THE SECRETARY OF DEFENSE."

119.    This admitted lack of a prescribed "standard of review" for an administrative appeal process required by statute (10 U.S.C. § 1034) is contrary to the most basic precepts of American jurisprudence.

120.    This admitted lack of any prescribed "standard of review" is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."   5 U.S.C. § 706(2).

121.    After counsel for LTC Rodriguez pointed out the defects of the procedures followed by the staff attorney in the Office of Legal Policy regarding the lack of a prescribed standard, the Department of Defense re-issued DoD Directive 7050.06 on April 17, 2015.

122.    The revised DoD Directive 7050.06 did not set forth a prescribed "standard or review." Also, it failed to a designated an official to replace the previously designated "Deputy Under Secretary of Defense for Program Integration," whom the 2007 DoD Directive 7050.06 described as being responsible for:  "On behalf of the Secretary of Defense, within 90 days of receipt of a[n administrative appeal under this Directive], review the final decision of the Secretary of the Military Department concerned . . . , and decide whether to uphold or reverse the decision of the Secretary of the Military Department concerned."  *Id.* ¶5.2.2. at p.4.

123.    Accordingly, and for the other reasons described above, LTC Rodriguez urges the Court to rule that Defendant Penrod's final decision was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2).

**COUNT SEVEN**
**(Plaintiff Faced a Non-Transparent Adversarial Process Wherein He Was Not Provided the Agency's Adversarial Brief Violating DoD Directive 7050.06, the APA, the MWPA, And the Fifth Amendment to the U.S. Constitution)**

124.    Plaintiff re-alleges the allegations set forth in paragraphs 1-123 above as if fully set forth herein.

125.    On November 19, 2015, at the DC Circuit, Defendant Penrod filed, without seeking LTC Rodriguez's consent, what Defendant Penrod described as a "revised certified index to the administrative record in this case" (Dkt #1584516).

126.    On November 20, 2015, LTC Rodriguez objected by letter (Dkt #1584665), explaining that, what Defendant Penrod filed was neither a revision nor an index to "the administrative record" as defined by either 28 U.S.C. § 2112 ("Record on review and enforcement of agency orders")) or Rule 16(a) of the Federal Rules of Appellate Procedure ("Composition of the Record").  It was Defendant Penrod's effort to avoid simply certifying the preexisting administrative record.

127.    Defendant Penrod's November 19, 2015, pleading explained:  "The prior certified index omitted an internal Department of Defense memorandum that the government had included (following a voluntary waiver of privilege) in the administrative record of LTC Rodriguez's prior petition for review."

128.    The newly added Department of Defense memorandum, in fact, was never in the administrative record of petitioner's prior petition for review.

129.    The DoD memorandum had been produced to Counsel after a formal demand that Defendant Penrod's counsel "promptly correct what [he] filed on January 13, 2014, in lieu of the 'certified index to the record' ordered by the Court on December 13, 2014.

130.    Restated, the DoD Memorandum had been hidden by Defendant Penrod's predecessor's counsel until forced to produce and such document was never part of the administrative record.

131.    On November 19, 2015, Defendant Penrod provided one version of the Memorandum from Major Ryan D. Oakley, Deputy Director, Office of Legal Policy, to P.M. Tamburrino, Chief of Staff, Office of the Under Secretary of Defense for Personnel and Readiness, "Re:

Appeal of Army Board of Correction of Military Records (ABCMR) Decision—LTC Robert W. Rodriguez (Retired)."

132.    This "internal memorandum" is nothing other than an adversarial submission to the decision maker by an attorney within the Department of Defense who we now know was apparently collaborating with counsel for the ABCMR in what is supposed to be an "APPEAL TO THE SECRETARY OF DEFENSE" under the MWPA, 10 U.S.C. § 1034.

133.    This type of secret collaboration would be analogous to a scenario where one of the law clerks for an appellate Judge of was secretly collaborating with the law clerk for the District Court Judge whose ruling was on appeal to this Court to prepare an appellate Judge's "bench memo" – and then pretended that this "bench memo" is part of the lower court's record on review.

134.    Defendant Penrod's pretended to "certify" what was obviously not the "Administrative Record" for judicial review, thereby compounding the nature of her final decision as:  "(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (B) contrary to constitutional right, power, privilege, or immunity; (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; [and/or] (D) without observance of procedure required by law."  5 U.S.C. § 706(2).

135.    Accordingly, this Court should hold that Defendant Penrod acted arbitrarily, and in light of the fact that this matter has already been remanded once, direct that the Secretary of Defense, for whom Defendant Penrod purported to issue the final decision on review, to provide the "whole loaf" of relief to LTC Rodriguez that is warranted by the administrative record before this Court, including retroactive promotion, as explained more fully below.

## COUNT EIGHT
### (Defendant's decision missed a statutory time deadline, and is therefore arbitrary, capricious, and not in accordance with law)

136.    Plaintiff re-alleges the allegations set forth in paragraphs 1-135 above as if fully set forth herein.

137.    Under the provisions of MWPA, 10 U.S.C. § 1034(h), a military whistleblower who is "not satisfied with the disposition of the matter, may *submit the matter to the Secretary of Defense. The Secretary shall make a decision to reverse or uphold the decision* of the Secretary of the military department concerned in the matter within 90 days after receipt of such a submittal" (emphasis added).

138.    Defendant Penrod's March 6, 2015, decision was rendered five and a half months after the 90 day deadline set by the MWPA (assuming the 90 days statutory clock began to tick after LTC Rodriguez's in-person meeting with Defendant Penrod on September 29, 2014).

139.    Mr. Tamburrino's decision was likewise issued on January 28, 2013, four months after LTC Rodriguez submitting his administrative appeal to the Secretary of Defense on September 28, 2012, and more than 90 days after LTC Rodriguez supplemented that appeal on October 22, 2012.

140.    As Defendant Penrod has had multiple opportunities, but has never addressed this argument, based on this unrebutted argument alone, the Court should vacate the final decision on review, and remand with specific instructions to grant the relief outlined on pages 47-48 of LTC Rodriguez' Petitioner's Brief, including retroactive promotion to Colonel.

141.    This Court should rule that the final decision was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2).

**COUNT NINE**
**(Defendant's decision includes an unexplained departure from precedent,**
**and is therefore arbitrary, capricious, and not in accordance with law)**

142.    Plaintiff re-alleges the allegations set forth in paragraphs 1-141 above as if fully set forth

herein.

143.    Defendant Penrod, in her final decision, wrote:

> I find that the ABCMR did not abuse its substantial discretion in denying the
> specific relief requested.  Specifically, the Board concluded there was insufficient
> justification for the extraordinary relief you requested, to include retroactive
> promotion to Colonel (O-6) and resulting pay and benefits.  I considered the Air
> Force BCMR case you submitted in rebuttal, along with a list of 28 other
> instances where a Secretarial-directed recommendation for promotion was
> granted.  I find, however, that the ABCMR articulated legitimate reasons for its
> decision, based on the specific facts and circumstances of your case.

144.    This is precisely the type of "unexplained departure from its precedent" that the United

States Court of Appeals for the District of Columbia Circuit has held to be "arbitrary and

capricious."

145.    In October 2012, shortly after Rodriguez submitted his appeal to the Secretary of Defense

under 10 U.S.C. § 1034, Rodriguez discovered an Air Force Correction Board precedent for

retroactive promotion to Colonel (O-6) that included similar factual circumstances to those that

had been brief to the Army Board for Correction of Military Records in Rodriguez's matter, and

promptly brought this Air Force precedent to the attention of Defendant Penrod's predecessor in

the form of a Rule 28(j)-type submission.

146.    When Rodriguez met with Defendant Penrod on September 29, 2014, he reminded her of

this Air Force precedent for retroactive promotion, both in a "Read-Ahead" written submission

(DA6-30) and then again orally at the meeting.

147.    It was "arbitrary and capricious" for Defendant Penrod to dispose of this agency

precedent with no explanation other than "I considered the Air Force BCMR case you submitted

in rebuttal, along with a list of 28 other instances where a Secretarial-directed recommendation for promotion was granted. I find, however, that he ABCMR articulated legitimate reasons for its decision, based on the specific facts and circumstances of your case."

148.    It is axiomatic that an agency must treat similar cases in a similar manner unless it can provide a legitimate reason for failing to do so. Therefore, Defendant Penrod's conclusory two sentence comment is arbitrary and capricious because it is inconsistent with its regulations and an unexplained departure from its precedent.

149.    As was demonstrated *supra*, the ABCMR had found errors and injustices. It therefore was required by law to grant relief to make LTC Rodriguez whole. Defendant Penrod knew that the ABCMR had granted no relief for these acknowledged errors and injustices.

150.    Hence, Defendant Penrod acted in an arbitrary and capricious manner, in basing her decision based on the flawed ABCMR decision.

151.    Defendant Penrod and her predecessor have had multiple opportunities to explain, yet have failed to articulate an adequate explanation, why retroactive promotion should not be awarded based on agency precedent in the administrative record now before this Court. Defendant Penrod's failure to provide such an explanation was an arbitrary and capricious "unexplained departure from its precedent."

152.    Accordingly, this Court should hold that Defendant Penrod acted arbitrarily, and in light of the fact that this matter has already been remanded once, (by agreement of the parties in No. 13-1192), direct that the Secretary of Defense effectuate the "whole loaf" of relief required by law, including retroactive promotion to Colonel.

## PRAYER FOR RELIEF

WHEREFORE, judgment should be entered in favor of Plaintiff and against Defendant with the

Court granting the following relief:

**A.** Vacate Defendant Penrod's decision of March 6, 2015, not to grant further relief;

**B.** Direct the Secretary of Defense, who is the statutory Appellate Authority under 10 U.S.C. 1034, or his lawfully appointed delegate, to provide the "whole loaf" of relief to Rodriguez that is required based on the administrative record before this Court, including but not limited to, retroactive promotion to Colonel (retired);

**C.** Direct the Secretary of Defense, or his lawfully appointed delegate, to provide for periodic independent reviews of the military whistleblower administrative appeal process required by 10 U.S.C. 1034 to ensure that:

1. The Appellate Authority is a properly appointed Senate-confirmed official, senior to the Service Secretaries, with appointment by a DoD Directive signed by competent authority or written delegated authority to act on behalf of the Secretary of Defense in deciding military whistleblower administrative appeals;

2. The standard of review for those appeals is prescribed;

3. Conflicts of interest throughout that administrative appeal process are avoided; and

4. Military whistleblower appellants such as Rodriguez are afforded the "essential constitutional promises" of procedural due process required by the 5th Amendment, including "notice and an opportunity to be heard . . . at a meaningful time and in a meaningful manner." *Hamdi v. Rumsfeld*, 542 U.S. 507, 533 (2004) (internal quotes and citations omitted).

March 28, 2018                              Respectfully,

                                           __/s/  Joseph E. Schmitz_____
                                           Joseph E. Schmitz, D.C. Bar #420229
                                           SCHMITZ & SOCARRAS LLP
                                           8200 Greensboro Drive; Suite 1500
                                           McLean, Virginia  22102
                                           703-992-3095
                                           jschmitz@SandS-LLP.com

                                           *Attorneys for Robert W. Rodriguez*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 28 Day of March 2018, the foregoing COMPLAINT is served via this Court's Electronic Case Filing System upon all parties of record.

Date:  March 28, 2018

_/s/ Joseph E. Schmitz_____
Joseph E. Schmitz
SCHMITZ & SOCARRAS LLP
8200 Greensboro Drive; Suite 1500
McLean, Virginia  22102
703-639-9022 office
703-992-3095 cell
jschmitz@SandS-LLP.com